ORIGINAL

FILED
JUL 25 2008
U.S. COURT OF FEDERAL CLAIMS

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**DELHUR INDUSTRIES, INC., a Washington corporation,**

**Plaintiff,**

**v.**

**UNITED STATES OF AMERICA, by and through the Department of Transportation, Federal Highway Administration, Central Federal Lands Highway Division,**

**Defendant.**

No. 08-541 C

COMPLAINT

Federal Highway Administration
Contract No. DTFH68-04-C-00001

(Contract Disputes Act)

## COMPLAINT

### PARTIES

1. Delhur Industries, Inc. ("Delhur") is a Washington corporation in good standing and is duly licensed as a construction contractor in Washington and New Mexico and is properly registered and licensed to do business in both states.

2. The defendant is the United States of America, acting by and through the Department of Transportation, Federal Highway Administration, Central Federal Lands Division ("FHA").

### JURISDICTION

3. This action arises out of the contracting officer's July 31, 2007 final decision denying the timely and properly certified claim filed by Delhur relating to FHA contract no. DTFH68-04-C-00001.

4. This court has jurisdiction of the claims presented in this Complaint under the Contract Disputes Act of 1978, 41 USC § 609(a)(1) and 28 USC § 1491(a)(2).

### STATEMENT OF FACTS

5. On December 2, 2003, FHA awarded Delhur contract no. DTFH68-04-C-00001

for the construction of a portion of Sacramento River Road in New Mexico, PFH 45-1(5) (the "Contract"). Delhur's portion of the project was for the construction of 12.359 km of Sacramento River Road (the "Project").

6. FHA provided the plans, drawings and specifications for the Project (the "Plans"). Delhur relied on the Plans to assess the scope and estimate the cost of the Project in order to prepare the bid it submitted to FHA for the Project.

7. The Plans represented that the Project would be a "borrow job" in that Delhur would need to haul in or bring on site 12,700 m3 of materials to complete its scope of work.

8. Among other things, the Plans represented that:

a. the amount of swell of the excavated material on the Project was between zero and 5%;

b. the material generated from the excavation of the road prism and the mechanically stabilized earth ("MSE") walls would be used in the roadway embankment; and

c. the excavated material in the area of the MSE walls could be embanked within 1000m of its origin.

9. The actual, average swell of the material excavated on the Project is estimated to be approximately 40%. This error in the Plans regarding the amount of swell on the Project resulted in the generation of excess excavated material.

10. The Plans also called for the installation of numerous culvert pipe catch basins on the Project. However, the Plans did not account for the material excavated during the installation of these catch basins.

11. The error in the Plans regarding the failure to account for the excess material generated from the installation of the culvert pipe catch basins resulted in the generation of excess excavated material.

12. The Plans properly delineated the cut slopes of the MSE walls on the Project. However, the Plans grossly understated the volume of material resulting from the excavation of the MSE walls. This error resulted in additional excavated material being generated on the Project.

13. The Plans provided the slope of cut slopes on the Project. FHA required Delhur to lay back these slopes further than what was represented in the Plans. This required over excavation resulted in the generation of excess excavated material.

14. FHA also required Delhur to excavate the slope rounds to the construction limits, rather than within the designated tolerances represented in the Plans. The requested over excavation of the slope rounds resulted in the generation of additional excess excavated material.

15. As a result of paragraphs 9 through 14 above, there was over 90,000 m3 of excess excavated material generated on the Project. The Plans did not account for any excess material on the Project.

16. In or about April 2004, Delhur informed FHA that there would be a significant amount of excess excavated material on the Project that would need to be wasted. FHA ignored this information and told Delhur that the Plans were correct and there would be no excess excavated material on the Project.

17. As a result, Delhur was forced to "work around" the excess excavated material while attempting to construct the road prism and the MSE walls.

18. Being forced to work around the excess excavated material adversely affected Delhur's ability to timely and efficiently excavate the MSE walls. Because of the large amount of excess excavated material existing on site, in late April 2004, Delhur was forced to discontinue its major excavation of the MSE walls because it had nowhere to put or use the material generated from the construction of the walls.

19. Being forced to work around the excess excavated material also adversely

impacted Delhur's ability to timely complete the road prism. In June 2004, the embankments were substantially complete, yet there was 55,405 m3 of mass excavation to be completed on the road prism. Because the excess excavation could not be used on site and there was no waste site at which to place the 55,405 m3 of materials, Delhur was forced to discontinue its road prism work and demobilize its mass excavator.

20. The excess excavated material existing on site blocked the haul road used by Delhur to access the area where the MSE walls were to be constructed. This required Delhur to detour off of the haul road and on to a one-lane county road, which further delayed and increased the cost of the Project.

21. Starting in April 2004, Delhur was forced to place materials excavated in vicinity of the MSE walls in temporary waste sites and in embankments over 3000 feet away. In July 2004, FHA acknowledged an off-site waste site for the excess excavated material was necessary. Once the waste site was approved, Delhur had to transport the excess excavated material to the waste site.

22. The additional loading and hauling identified in paragraph 21 above exceed the 1000m requirement in the Plans and delayed and increased the cost of the Project.

23. Delhur's total costs associated with addressing the approximately 90,000 m3 of excess excavated materials and performing the extra work mandated by FHA identified in paragraphs 8 through 22 above was $1,189,969.

24. The Plans allowed for the use of granular backfill for the MSE walls. FHA rejected 11,200 m3 of fill that met the specifications set forth in the Plans.

25. Delhur was forced to use the erroneously rejected granular backfill in the embankment, which necessarily resulted in Delhur using less of the excess excavated material in the embankment. FHA's erroneous rejection of the granular fill increased Delhur's costs to complete the Project by $168,224.

26. FHA was responsible for checking the grade of the subgrade and base course. FHA used improper methods and procedures to check the grade, which resulted in FHA requiring tolerance for the subgrade and base course significantly below the tolerance represented in the Plans.

27. The reduced tolerances required by FHA caused a significant increase in Delhur's cost to complete the Project.

28. The Plans provided the tolerances for the rock scaling and slope round requirements on the Project. FHA instructed Delhur to manually scale rocks from the slope in excess of the requirements represented in the Plans and in excess of what is standard practice in the construction industry. Delhur performed the work, which increased its costs to complete its scope of work on the Project.

29. During the course of its work on the Project; Delhur was forced to undertake additional work to maintain the public road due to unforeseen increased use and abnormal weather conditions. This work included the installation of a temporary guard rail. The cost of the maintenance work performed by Delhur was $43,515.

30. The combination of the events set forth in paragraphs 6 through 29 above resulted in an approximately 6 ½ month delay in the completion of the Project and increased Delhur's total cost to complete the Project by $1,669,153. Delhur incurred $312,516 in overhead costs attributed to the aforementioned extra work and delays.

**FIRST CLAIM FOR RELIEF**

**(Breach of Implied Duties)**

**Count I - Defective Specifications/Spearin Doctrine**

31. Delhur realleges and incorporates paragraphs 1 through 30 above.

32. FHA warranted that:

a. if Delhur followed the Plans, the Project could be satisfactorily completed as represented in the Plans and within the time allowed by the Contract;

b. the natural and physical condition of the site was as represented in the Plans; and

c. the Plans were accurate and suitable for use at the Project.

33. Delhur reasonably relied on the representations in the Plans in assessing and bidding the Project. Delhur further reasonably relied on the Plans in performing its scope of work on the Project.

34. FHA breached its duty to provide accurate and satisfactory plans because the Plans for the Project were materially defective in one or more of the following ways:

a. The Plans improperly indentified the amount of swell of the material to be excavated on the Project;

b. The Plans improperly stated that approximately 12,300 m3 of materials would need to be imported to complete the job;

c. The Plans failed to account for the excavated material generated from the installation of the culvert pipe catch basins;

d. The Plans improperly stated that the material excavated in the area of the MSE walls could be embanked within 1000m of its origin;

e. The Plans failed to indentify that over 90,000 m3 of excavated material would need to be transported and stored off site and eventually disposed of;

f. The Plans improperly represented the volume of excavated material generated from the cut of the slopes of the MSE walls; and

g. The Plans failed to provide for a waste site to handle the excess excavated material.

35. Delhur notified FHA of the errors and inaccuracies in the Plans as soon as they became known to Delhur. FHA failed to timely address or respond to the errors and inaccuracies in the Plans and further failed to properly direct Delhur regarding how to proceed with its scope of work in light of the same.

36. As a direct result of the deficiencies and inaccuracies in the Plans and the resulting difficulties, Delhur's work on the Project was delayed by several months and its actual, reasonable costs incurred to complete the Project were increased by $1,669,153. Delhur incurred $312,516 in overhead costs attributed to the aforementioned extra work and delays.

37. As a result of the premises above, FHA is indebted to Delhur in the amount of $1,981,669 together with the allowed statutory rate of interest under FAR §52.233-1 from the date said amount became due and owing until paid.

**Count II – Good Faith & Fair Dealing**

38. Delhur realleges and incorporates paragraphs 31 through 36 above.

39. FHA breached its duty of good faith and fair dealing by:

a. failing and refusing to timely acknowledge the errors in the Plans and that the Project was an "excess job", not a "borrow job", and that a waste site was necessary;

b. improperly refusing to accept the granular backfill even though it met the applicable specifications;

c. erroneously limiting or eliminating top soil stockpile areas;

d. improperly calculating the volume handled per vehicle when accessing top soil hauling costs;

e. requiring excess scaling of rocks and the over rounding of the slopes without additional compensation;

f. improperly checking the road grade;

g. failing and refusing to acknowledge or address Delhur's requests regarding the appropriate course of action relating to the handling and disposition of the excess excavated material;

h. erroneously requiring Delhur to lay back the cut slopes further than

required by the Plans; and

i. failing and refusing to work with Delhur to address the handling and disposition of the excess excavated material.

40. As a direct result of FHA's breaches as alleged in paragraph 39, Delhur's work on the Project was delayed by several months and its actual, reasonable costs to complete the Project were increased by $1,669,153. Delhur incurred $312,516 in overhead costs attributed to the aforementioned extra work and delays.

41. As a result of the premises above, FHA is indebted to Delhur in the amount of $1,981,669 together with the allowed statutory rate of interest under FAR §52.233-1 from the date said amount became due and owing until paid.

**Count III**

**(Duty to Cooperate)**

42. Delhur realleges and incorporates paragraphs 38 through 41 above.

43. FHA had a duty to cooperate with Delhur regarding the Project. FHA breached its duty to cooperate with Delhur by:

a. failing and refusing to timely acknowledge the errors in the Plans and that the Project was an "excess job", not a "borrow job", and that a waste site was necessary;

b. improperly refusing to accept the granular backfill even though it met the applicable specifications;

c. erroneously limiting or eliminating top soil stockpile areas;

d. improperly calculating the volume handled per vehicle when accessing top soil hauling costs;

e. requiring excess scaling of rocks and over rounding of the slopes without additional compensation;

f. improperly checking the road grade;

g. failing and refusing to acknowledge or address Delhur's requests regarding the appropriate course of action relating to the handling and disposition of the excess excavated material;

h. erroneously requiring Delhur to lay back the slope of the cut slopes further than required by the Plans; and

i. failing and refusing to work with Delhur to address the handling and disposition of the excess excavated material.

44. As a direct result of FHA's breaches as alleged in paragraph 43, Delhur's work on the Project was delayed by several months and its actual, reasonable costs to complete the Project were increased by $1,669,153. Delhur incurred $312,516 in overhead costs attributed to the aforementioned extra work and delays.

45. As a result of the premises above, FHA is indebted to Delhur in the amount of $1,981,669 together with the allowed statutory rate of interest under FAR §52.233-1 from the date said amount became due and owing until paid.

**SECOND CLAIM FOR RELIEF**

**(Constructive Change – Equitable Adjustment)**

46. Delhur acknowledges its total recovery under Counts I, II & III below cannot exceed the principal amount of $1,981,669.

**Count I – Defective Plans**

47. Delhur realleges and incorporates paragraphs 1 through 37 above.

48. The defects, errors and inaccuracies in the Plans resulted in a constructive change to the Contract that materially increased Delhur's scope of work on the Project and resulted in Delhur performing work in addition to that required by the Plans and performing some of its scope of work using different means and processes than set forth in the Plans.

49. Under FAR 52.243-4, Delhur is entitled to be reimbursed by FHA in the amount

of $1,751,128 for its actual, reasonable increased costs associated with the constructive changes, together with the allowed statutory rate of interest under FAR § 52.233-1 on said amount from the date said amount became due and owing until paid.

**Count II – Differing Subsurface Conditions**

50. Delhur realleges and incorporates paragraphs 1 through 37 above.

51. The actual swell of the excavated material (@ 40%) differed significantly from the swell represented in the Plans (0 to 5%). The amount of swell was a latent, subsurface condition that could not be discovered by Delhur until excavation began.

52. Addressing the significantly increased amount of excavated material resulted in a constructive change to the Contract that materially increased Delhur's scope of work on the Project and resulted in Delhur performing work in addition to that required by the Plans and performing some of its scope of work using different means and processes than set forth in the Plans.

53. Under FAR 52.243-5, Delhur is entitled to be reimbursed by FHA in the amount of $1,447,994 for its actual, reasonable increased costs associated with the constructive changes, together with the allowed statutory rate of interest under FAR § 52.233-1 on said amount from the date said amount became due and owing until paid.

**Count III – FHA Directives/Changes**

54. Delhur realleges and incorporates paragraphs 38 through 45 above.

55. The erroneous and excessive requirements imposed upon Delhur by FHA resulted in constructive changes to the Contract that resulted in Delhur performing: (1) work on the Project that was significantly different than and beyond the scope of the work required in the Plans; and (2) some of its scope of work using different means and processes.

56. Under FAR 52.243-4, Delhur is entitled to be reimbursed by FHA in the amount of $781,111 for its actual, reasonable increased costs associated with the constructive

changes, together with the allowed statutory rate of interest under FAR § 52.233-1 on said amount from the date said amount became due and owing until paid.

**THIRD CLAIM FOR RELIEF**

**(Breach of Contract)**

57. Delhur realleges and incorporates paragraphs 1 through 56 above.

58. FHA breached the Contract in one or more of the following ways:

a. FAR § 52.236-2 – by failing, despite notice of differing site conditions, to make a timely and adequate investigation of the conditions and by failing to make an equitable adjustment to the Contract to compensate Delhur for the work it performed and costs it incurred as a result of the differing site conditions;

b. FAR § 52.236-4 – by failing to provide accurate data and information to Delhur regarding the site conditions;

c. FAR § 52.243-4 – by failing to equitably adjust the Contract amount to compensate Delhur for: (i) changes made to Delhur's scope of work by FHA; and (ii) adjustments made to the Contract and Delhur's scope of work due to the defective specifications and plans provided to Delhur by FHA.

59. Delhur could not have anticipated the material errors in the Plans or the additional requirements imposed by FHA until after the Project was underway.

60. Delhur has performed all obligations required of it under the Contract, or such obligations have been waived or otherwise discharged. All conditions precedent to Delhur's right to receive payment for its work have occurred.

61. As a direct and proximately result of FHA's breaches of the Contract, Delhur's scope of work was more difficult to perform and was expanded beyond the scope of work set forth in the Plans, which resulted in increased costs and damages to Delhur in the amount of $1,981,669.

62. Despite demand, FHA has failed and refused to pay the amount it owes to Delhur

and, as a result, is indebted to Delhur in the amount of $1,981,669 plus accrued interest thereon as allowed by FAR §52.233-1.

In the alternative and only if Delhur's First, Second & Third Claims for Relief are denied:

**FOURTH CLAIM FOR RELIEF**

**(Breach of Contract – Cardinal Change Rule)**

63. Delhur realleges and incorporates paragraphs 1 through 56 above.

64. Due to defects and errors in the Plans, the additional requirements imposed by FHA, and the additional work performed by Delhur due to differing and unforeseen site conditions, the actual work performed by Delhur on the Project was significantly different than and beyond the scope of work identified in and required by the Plans.

65. In particular, but not as a limitation, the fact that the Project was an "excess job" of over 90,000 m3 instead of a "borrow job" of 12,700 m3, constituted a differing site condition that significantly changed the scope of the Project, required additional work beyond the scope of the Plans, and increased Delhur's costs to complete the Project.

66. The cumulative scope of the changes on the Project constituted a cardinal change to the Contract and, therefore, constituted a breach of the Contract by FHA.

67. As a result of the cardinal changes to and FHA's breach of the Contract, FHA is indebted to Delhur in the sum of $1,669,153 to fairly compensate Delhur for the actual scope of work performed by it on the Project, together with $312,516 for Delhur's overhead, along with accrued interest on the total amount of $1,981,669 as allowed by FAR §52.233-1.

WHEREFORE, Delhur prays for the following relief:

1. On its First Claim for Relief, Count I, for a judgment against FHA in the amount of $1,981,669, plus interest thereon as allowed by FAR § 52.233-1;
2. On its First Claim for Relief, Counts II & III, for a judgment against FHA in the

amount of $1,981,669, plus interest thereon as allowed by FAR § 52.233-1;

3. On its Second Claim for Relief, Count I, and to the extent not satisfied by its First Claim for Relief, for a judgment against FHA in the amount of $1,751,128, plus interest thereon as allowed by FAR § 52.233-1;

4. On its Second Claim for Relief, Count II, and to the extent not satisfied by its First Claim for Relief, for a judgment against FHA in the amount of $1,447,994, plus interest thereon as allowed by FAR § 52.233-1;

5. On its Second Claim for Relief, Count III, and to the extent not satisfied by its First Claim for Relief, for a judgment against FHA in the amount of $781,111, plus interest thereon as allowed by FAR § 52.233-1;

6. On its Third Claim for Relief and to the extent not satisfied by its First or Second Claims for Relief, for a judgment against FHA in the amount of $1,981,669, plus interest thereon as allowed by FAR § 52.233-1;

7. On its Alternative Fourth Claim for Relief and to the extent its First, Second, or Third Claims for Relief are denied, for a judgment against FHA in the amount of $1,981,669, plus interest thereon as allowed by FAR § 52.233-1;

8. For Delhur's costs and disbursements incurred herein; and

9. For any other relief the court deems just and equitable.

Dated: July 24th, 2008.

SUSSMAN SHANK LLP

By ______________________________

Jason W. Alexander, OSB No. 96209
Attorneys for Delhur Industries, Inc.
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205
(503) 227-1111 (phone)
(503) 248-0130 (facsimile)

F:\CLIENTS\17891\003\P-COMPLAINT.DOC